UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STACEY FRANCES SIBIO,<br>    Plaintiff | ) <br> ) <br> ) | CIVIL ACTION NO. 4:20-CV-1339 |
| v. | ) <br> ) | (ARBUCKLE, M.J.) |
| KILOLO KIJAKAZI,[1]<br>    Defendant | ) <br> ) | |

MEMORANDUM OPINION

I.    INTRODUCTION

Plaintiff Stacy Frances Sibio, an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "the officer's successor is automatically substituted as a party."); s*ee also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is not supported by substantial evidence. Accordingly, the Commissioner's final decision will be VACATED.

II.     BACKGROUND & PROCEDURAL HISTORY

On October 31, 2017, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 10; Doc. 15-2, p. 11). In this application, Plaintiff alleged she became disabled as of July 21, 2017, when she was forty-one years old, due to the following conditions: chronic pain in back, hip and leg; chronic fatigue; anxiety; depression; PCOS; IBS; acid reflux; and status post total hip replacement. (Admin. Tr. 195; Doc. 15-6, p. 5). Plaintiff alleges that the combination of these conditions affects her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, remember, complete tasks, concentrate, and get along with others. (Admin. Tr. 213; Doc. 15-6, p. 23). Plaintiff has at least a high school education. (Admin. Tr. 20; Doc. 15-2, p. 21). Before the onset of her impairments, Plaintiff worked as a customer service representative and manager at a retail store. *Id.*

On April 5, 2018, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 10; Doc. 15-2, p. 11). On April 11, 2018, Plaintiff requested an administrative hearing. *Id.*

On February 13, 2019, Plaintiff, assisted by her counsel, appeared and testified during a hearing before Administrative Law Judge Charles A. Dominick (the "ALJ"). *Id.* On May 21, 2019, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 22; Doc. 15-2, p. 23). On July 11, 2019, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 168; Doc. 15-4, p. 32).

On June 1, 2020, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1; Doc. 15-2, p. 2).

On July 21, 2020, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence, and improperly applies the relevant law and regulations. *Id*. As relief, Plaintiff requests that the Court award benefits, or in the alternative, remand this matter for a new administrative hearing. *Id*.

On January 25, 2021, the Commissioner filed an Answer. (Doc. 14). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. *Id*. Along with her Answer,

the Commissioner filed a certified transcript of the administrative record. (Doc. 15).

Plaintiff's Brief (Doc. 18), the Commissioner's Brief (Doc. 19), and Plaintiff's Reply (Doc. 20) have been filed. This matter is now ripe for decision.

III.   STANDARDS OF REVIEW

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security appeals.

    A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d

1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

B.  STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[2] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged

---

[2] Throughout this Memorandum Opinion, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on May 21, 2019.

in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could

perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 404.1512(b)(3); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

IV.   DISCUSSION

   A.   THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In his May 2019 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through December 31, 2017. (Admin. Tr. 12; Doc. 15-2, p. 13). Then, Plaintiff's application was evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between July 21, 2017 (Plaintiff's alleged onset date) and December 31, 2017 (Plaintiff's date last insured) ("the relevant period"). *Id*. At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: degenerative disc disease/ osteoarthritis of the lumbar spine; residuals from total hip replacement; fibromyalgia; generalized anxiety disorder; and major depressive disorder. *Id*. The ALJ also identified the following medically determinable non-severe impairments: gastro-esophageal reflux disease; irritable bowel syndrome; and polycystic ovarian syndrome. (Admin. Tr. 12-13; Doc. 15-2, pp. 13-14). At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 13; Doc. 15-2, p. 14).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 404.1567(b) except:

> she could stand and walk no more than four hours total during the course of an eight-hour workday. She had to be given the opportunity to alternate between sitting and standing at least every 30 minutes. She was limited to occasional balancing, stooping, kneeling, crouching, and climbing on ramps and stairs, but never crawling and

> never climbing on ladders, ropes or scaffolds. She had to avoid unprotected heights and dangerous moving machinery, She was limited to simple, routine tasks, but not at a production rate pace. She was limited to occupations requiring no more than simple work related decision with no more than occasional changes in the work setting.

(Admin. Tr. 15; Doc. 15-2, p. 16).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in her past relevant work. (Admin. Tr. 20; Doc. 15-2, p. 21). At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 20-21; Doc. 15-2, p.. 21-22). To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three representative occupations: assembler of small products, DOT #739.687-030; cashier in a parking lot, DOT #211.462-010; and toll collector, DOT #211.462-038. (Admin. Tr. 21; Doc. 15-2, p. 22).

Plaintiff raises the following two issues with the ALJ's opinion in her statement of errors:

1. The ALJ failed to assign significant weight to the opinions of the treating physician for erroneous reasons.

2. The ALJ failed to present a hypothetical question containing all of Plaintiff's credibly established limitations to the VE.

(Doc. 18, p. 4). To decide this case, I only need to discuss the first claimed error.

  B.  WHETHER THE ALJ'S EVALUATION OF DR. STROKA'S OPINION IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Plaintiff argues that the ALJ erred in three different ways when crafted Plaintiff's RFC. First, she argues that the reasons the ALJ gives for discounting Dr. Stroka's opinion is not supported by the medical record. (Doc. 18, pp. 9-11). Second, Plaintiff argues that the ALJ did not consider Plaintiff's lumbar impairment when formulating Plaintiff's RFC. (*Id.* at 11-12). Third and finally, Plaintiff alleges that when the ALJ discounted Dr. Stroka's opinion, the ALJ discounted all medical opinions, and therefore conducted a lay interpretation of the medical record to formulate an RFC. (*Id.* at 12-13). However, to decide this case, I only need to analyze a portion of Plaintiff's first argument: whether the ALJ erred in finding Dr. Stroka's opinion unpersuasive in part.

In this section, I will discuss the standards used for analyzing medical opinion evidence, why the ALJ erred in his analysis of Dr. Stroka's opinion, and why this is a not a harmless error.

    1.  Standards for Analyzing Medical Opinion Evidence

An ALJ's consideration of competing medical opinions is guided by the following factors: the extent to which the medical source's opinion is supported by

relevant objective medical evidence and explanations presented by the medical source (supportability); the extent to which the medical source's opinion is consistent with the record as a whole (consistency); length of the treatment relationship between the claimant and the medical source; the frequency of examination; the purpose of the treatment relationship; the extent of the treatment relationship; the examining relationship; the specialization of the medical source and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c).

The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. § 404.1520c(b)(2). The ALJ will explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. The ALJ may, but is not required to, explain his or her consideration of the other factors unless there are two equally persuasive medical opinions about the same issue that are not exactly the same. 20 C.F.R. § 404.1520c(b)(3). Unlike prior regulations, under the current regulatory scheme, when considering medical opinions, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a).

    2.  Did the ALJ Properly Consider Dr. Stroka's Opinion?

Here I will discuss Dr. Stroka's opinion, the parties' arguments, and why the ALJ erred in his consideration of Dr. Stroka's opinion.

Dr. Stroka, Plaintiff's primary care physician, provided one of three medical opinions that described Plaintiff's limitations. (Admin. Tr. 1129-31, Doc. 15-18, pp. 52-54). Dr. Stroka opined that Plaintiff could not lift more than 10 pounds, could stand and walk for less than 2 hours, and sit for 4 hours. (*Id.*). She also thought that Plaintiff needed to alternate sitting and standing every 30 minutes, and would miss more than three days of work per month. (*Id.*).

The ALJ found Dr. Stroka's opinion not persuasive in part. (Admin. Tr. 19, Doc. 15-2, p. 20). The ALJ found that Dr. Stroka's opinion that Plaintiff needed to alternate sitting and standing every 30 minutes was consistent with Plaintiff's testimony and the ALJ included that in the RFC. (*Id.*). However, the ALJ found that the rest of Dr. Stroka's opinion was unpersuasive because:

> [s]he did not support her assessment with any objective findings. Moreover, her opinion is not consistent with her own findings during the adjudicative period. Although there was evidence of pain, her gait was normal and neurological findings were generally unremarkable.

(*Id.*).

Plaintiff argues that the ALJ erred when he cited to Plaintiff's supposedly normal gait and normal neurological findings in discounting Dr. Stroka's opinion. (Doc. 18, pp. 9-11). Plaintiff argues that providers routinely found that Plaintiff

had abnormal musculoskeletal findings in their examinations. (*Id.*). The Commissioner responds that even if there is contrary evidence to the record (*i.e.*, instances of abnormal gait), it is not enough to overturn the ALJ's decision because it is still supported by substantial evidence. (Doc. 19, pp. 22-23). However, the Court is unable to rule on the merits of this claim because the ALJ failed to properly articulate his reasoning for disregarding Dr. Stroka's opinion. Namely, the ALJ erred when he failed to discuss whether Dr. Stroka's opinion was consistent with the record as a whole.

    First, the ALJ appears to have confused the supportability and consistency factors that are used in analyzing medical opinions. The supportability factor contemplates that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). This contrasts with the consistency factor, which requires that the "more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. 404.1520c(c)(2). This legalese can be simplified as follows:

> [S]upportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record. In other words, the ALJ's analysis is directed to whether the medical source's opinion is supported by the source's own records and consistent with the other evidence of record.

*Cook v. Comm'r of Soc. Sec.*, No. 20-cv-1197, 2021 WL 1565832, at *6 (M.D. Fla. Apr. 6, 2021).

As applied to this case, first, the ALJ appears to confuse the two factors in his analysis. When the ALJ refers to Dr. Stroka's opinion relative to her own medical records, he meant to discuss supportability, not consistency. If this were the only error the ALJ made in analyzing Dr. Stroka's opinion, it would likely be a harmless error. However, the ALJ failed to discuss whether Dr. Stroka's opinion was consistent with the record as a whole. An ALJ must analyze both consistency and supportability, and an ALJ's failure to do so will often lead to remand. *See, e.g., Andrews v. Kijakazi*, No. 20-cv-1878, 2022 U.S. Dist. LEXIS 37111, at *21-22 (M.D. Pa. Mar. 2, 2022) (remanding case where the ALJ "tersely addressed both the supportability and consistency of [a provider's] opinion" which makes "the ALJ's rationale . . . too opaque to permit judicial review."); *Brownsberger v. Kijakazi*, No. 20-cv-1426, 2022 WL 178819, at *15-19 (M.D. Pa. Jan. 18, 2022) (remanding case because the ALJ did not "provide any citations to specific evidence on the record to explain his reasoning and does not explain how he

evaluated the opinions regarding the supportability and consistency factors."). In this case, the ALJ does not describe or cite to any medical records in his analysis of Dr. Stroka's opinion. And while Dr. Stroka's medical opinion may not be supported by the evidence,[3] the ALJ still had to articulate whether the opinion was consistent with the rest of the record.

### 3. This Error is Not Harmless

I cannot say this error is harmless. If the ALJ analyzes the consistency of Dr. Stroka's opinion, he might find her opinion persuasive. Critically, however, if the ALJ accepts Dr. Stroka's opinion, Plaintiff is likely precluded from full time competitive work.

---

[3] A review of the medical record shows that the three times Plaintiff visited Dr. Stroka, she consistently found that Plaintiff had a normal gait. (Admin. Tr. 665, Doc. 15-10, p. 52) (normal gait and neurological function on a September 12, 2016 visit); (Admin. Tr. 642, Doc. 15-10, p. 29) (normal gait and neurological function on a March 31, 2017 visit); (Admin. Tr. 624-28, Doc. 15-10, pp. 11-15) (normal gait and neurological function on a July 21, 2017 visit). However, almost every other physician found that Plaintiff had an abnormal gait. *See, e.g*, (Admin. Tr. 828-29, Doc. 15-11, pp. 21-22) (a physician assistant noted on a December 13, 2017 visit that Plaintiff had an antalgic gait); (Admin. Tr. 655, Doc. 15-10, p. 42) (a physician noted on a December 9, 2016 visit that Plaintiff was limping); (Admin. Tr. 275, Doc. 15-7, p. 35) (a physician noted on a January 3, 2017 visit that Plaintiff was limping); (Admin. Tr. 637, Doc. 15-10, p. 24) (a physician assistant noted on a April 4, 2017 visit that Plaintiff had a stiff gait).

The fact that the ALJ described Plaintiff's normal gait in discounting Dr. Stroka's opinion further emphasizes that the ALJ did not discuss whether the opinion was consistent with the record as a whole, not just whether Dr. Stroka's opinion is supported by her own medical records.

In her administrative hearing, Plaintiff's attorney posed a hypothetical that accepts all of Dr. Stroka's opined limitations. The hypothetical is as follows:

> ATTY: . . . Alternative hypothetical. The individual we're talking about is limited to lifting and carrying ten pounds occasionally and less than ten pounds frequently. Limited to standing and walking less than ten pounds frequently. Limited to standing and walking less than two hours total in an eight-hour day, and limited to sitting about four hours total in an eight-hour day. Would that individual be able to perform any work on a full-time basis?
> . . .
> VE: Well, certainly, no. We, we certainly fall short of what I constitute as full time employment or competitive, competitive work environment, which is 40-hour work week, eight-hour workday.
>
> ATTY: Understood. Last question, an individual who because of their impairments would have to miss work more than three times a month on a regular basis, would that individual be able to sustain any full-time employment
>
> VE: No. I, I generally look at six to ten working days annually, that's less than one day a month, and within that context, and again the Department of Labor and Industry supports those, those numbers. That anything behind that certainly jeopardizes the gainful employment, full-time employment, without an accommodation.

(Admin. Tr. 100-01, Doc. 15-2, pp. 101-02).

These limitations are identical to what Dr. Stroka opines as to Plaintiff's limitations. So should the ALJ fully consider Dr. Stroka's opinion and find it persuasive, it would alter Plaintiff's RFC, which could preclude Plaintiff from competitive work. Therefore, this is not a harmless error.

V.  CONCLUSION

Accordingly, I find that Plaintiff's request for the Commissioner's decision to be vacated and for this case to be remanded back to the Commissioner for a new hearing be granted as follows:

(1) The final decision of the Commissioner should be VACATED.

(2) Final judgment will be issued in favor of Stacy Frances Sibio.

(3) An appropriate order will issue.

Date: March 11, 2022                    BY THE COURT

*s/William I. Arbuckle*
William I. Arbuckle
U.S. Magistrate Judge